*ctj*

ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

SEP 2 3 2011
11:35

CLERK, U.S. DISTRICT COURT
By _____
       Deputy

| | | |
|---|---|---|
| LISA ANN COLEMAN, | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| V. | § | **CAUSE NO. 4:11-cv-00542-A** |
| | § | **(death-penalty case)** |
| RICK THALER | § | |
| Director, Texas Department | § | |
| of Criminal Justice, | § | |
| Institutional Division, | § | |
| Respondent | § | |

## MEMORANDUM OF LAW IN SUPPORT OF MOVANT'S PETITION FOR A WRIT OF *HABEAS CORPUS* PURSUANT TO 28 U.S.C. §2254

**JOHN W. STICKELS**
**STICKELS & ASSOCIATES, P.C.**
**P. O. BOX 121431**
**ARLINGTON, TEXAS 76012**
**(817) 479-9292**
**(817) 622-8071 (fax)**
**john@stickelslaw.com**

**ATTORNEY FOR LISA ANN COLEMAN**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................i

TABLE OF AUTHORITIES ...................................................................................ix

I. JURISDICTION .................................................................................................1

II.  CLAIMS PRESENTED .....................................................................................2

    CLAIM FOR RELIEF NUMBER ONE: ...........................................................2

    APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF HER LEGAL TEAM'S FAILURE TO ADEQUATELY INVESTIGATE THE FACTS OF THIS CASE AS REQUIRED BY *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984) AND AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION. ...........................2

    CLAIM FOR RELIEF NUMBER TWO: ...........................................................2

    APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF HER LEGAL TEAM'S FAILURE TO ADEQUATELY INVESTIGATE AND PRESENT MITIGATION EVIDENCE AS REQUIRED BY *WIGGINS V. SMITH*, (123 S.CT. 2527 (2003) AND *LEWIS V. DRETKE*, 355 F.3D 364 (5TH CIR. 2003) AND AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION.....................................................2

    CLAIM FOR RELIEF NUMBER THREE: ........................................................2

    APPLICANT HAS BEEN DENIED HER RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION AS SHE IS INCARCERATED AND FACES EXECUTION FOR AN OFFENSE FOR WHICH SHE IS ACTUALLY INNOCENT.................................................................2

CLAIM FOR RELIEF NUMBER FOUR: ....................................................................3

APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF APPELLATE COUNSEL'S FAILURE TO  ALLOW HER CONVICTION FOR INJURY TO A CHILD TO BECOME FINAL PRIOR TO HER CONVICTION FOR CAPITAL MURDER BECOMING FINAL.................................................................................................3

CLAIM FOR RELIEF NUMBER FIVE: .....................................................................3

APPLICANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHT  TO BE FREE FROM A WHOLLY ARBITRARY DEPRIVATION OF LIBERTY AND EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE ARBITRARY AND CAPRICIOUS INFLICTION OF THE DEATH PENALTY WERE VIOLATED BECAUSE THE EVIDENCE ADDUCED AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S ANSWER TO THE FUTURE DANGEROUSNESS SPECIAL ISSUE...........................................................................3

CLAIM FOR RELIEF NUMBER SIX:.........................................................................3

APPLICANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE ARBITRARY AND CAPRICIOUS INFLICTION OF THE DEATH PENALTY WERE VIOLATED BECAUSE THE STATUTE UNDER WHICH APPLICANT WAS SENTENCED TO DEATH  ALLOWS THE JURY TOO MUCH DISCRETION TO DETERMINE WHO SHOULD LIVE AND WHO SHOULD DIE AND BECAUSE IT LACKS THE MINIMAL STANDARDS AND GUIDANCE NECESSARY FOR THE JURY TO AVOID THE ARBITRARY AND CAPRICIOUS IMPOSITION OF THE DEATH PENALTY. ....................................................................................................................3

CLAIM FOR RELIEF NUMBER SEVEN: ..................................................................4

APPLICANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND EIGHTH AMENDMENT RIGHTS AS INTERPRETED IN *PENRY V. JOHNSON* WERE VIOLATED BECAUSE THE MITIGATION SPECIAL ISSUE SET FORTH IN THE TEXAS DEATH PENALTY STATUTE SENDS MIXED SIGNALS TO THE JURY THEREBY RENDERING ANY VERDICT REACHED IN RESPONSE TO THAT SPECIAL ISSUE INTOLERABLY UNRELIABLE. .........................................4

III. STANDARD OF REVIEW ..............................................................................5

A. 28 U.S.C. §2254(d). ...................................................................................5

B. 28 U.S.C. §2254(D) VIOLATES THE SEPARATION OF POWERS AND THIS COURT SHOULD INSTEAD REVIEW THE DECISION OF STATE COURT FOR CONSTITUTIONAL ERROR.................................................................................6

    1. DOCTRINE OF SEPARATION OF POWERS .....................................................6

    2. 28 U.S.C. §2254(D) VIOLATES SEPARATION OF POWERS ...........................8

C. 18 U.S.C. §2254(d) VIOLATES SEPARATION OF POWERS BECAUSE CONGRESS ORDERED THE SUSPENSION OF THE JUDICIAL TOOL OF *STARE DECISIS* ........................................................................................................9

D. 28 U.S.C. §2254(d) VIOLATES SEPARATION OF POWERS BECAUSE CONGRESS REQUIRES FEDERAL HABEAS COURTS TO DEFER TO AND UPHOLD STATE COURT DECISIONS ERRONEOUSLY INTERPRETING FEDERAL CONSTITUTIONAL LAW. ....................................................................10

E. CONCLUSION ............................................................................................12

IV. STATEMENT OF THE CASE ........................................................................13

A. CONFINEMENT AND RESTRAINT ................................................................13

B. PROCEDURAL HISTORY .............................................................................13

C. STATUS OF DIRECT APPEAL ......................................................................14

iii

D. STATUS OF STATE WRIT OF HABEAS CORPUS ............................................. 14

E. STATEMENT CONCERNING SUCCESSIVE WRIT PROVISION ..................... 14

F. STATEMENT CONCERNING FILING DATE. ....................................................... 14

V. NEED FOR EVIDENTIARY HEARING. .................................................................. 15

A. REQUEST FOR EVIDENTIARY HEARING ......................................................... 15

B. FACTS SHOWING NEED FOR EVIDENTIARY HEARING ................................ 16

C. CONCLUSION ........................................................................................................ 21

VI. SUMMARY OF THE ARGUMENT ....................................................................... 23

Claim For Relief Number One: ...................................................................................... 23

Ms. Coleman's legal team failed to adequately investigate and present guilt/innocence
evidence related to the kidnapping allegation contained in the indictment. As a result,
Applicant was prevented from presenting a defense to the kidnapping allegation.
Specifically, Applicant's legal team failed to interview Tonya Coleman Brown, Sharon
Coleman, and Marcella Williams. Because of these failures, Applicant's legal team
was not able to present a defense to the 'kidnapping' element of the capital murder
charge. These failures resulted in a violation of Applicant's Sixth Amendment Rights
to effective assistance of counsel and require that she be given a new trial. ................. 23

Claim For Relief Number Two: ...................................................................................... 23

Ms. Coleman's legal team failed to adequately investigate and present mitigation
evidence. Specifically, the facts and circumstances surrounding Applicant's trial and
the pre-trial investigation show that her legal team failed to thoroughly investigate her
mitigation evidence. The mitigation evidence was not effectively presented at trial.
These failures resulted in a violation of Applicant's Sixth Amendment Rights to
effective assistance of counsel and require that Applicant be given a new punishment
trial. ............................................................................................................................... 23

iv

Claim For Relief Number Three: ................................................................... 23

Ms. Coleman is actually innocent of the crime of conviction.  She did not commit a kidnapping as required to support a capital murder conviction.  Evidence obtained from Brown, Coleman, and Williams clearly shows that Applicant did not commit or attempt to commit a kidnapping.  This evidence was not available because Applicant's attorneys failed to adequately investigate the facts of this case and is inexorably intertwined with Applicant's claim of ineffective assistance of trial counsel.  The evidence from Brown, Coleman, and Williams establishes by clear and convincing evidence that no reasonable juror could have convicted Applicant of the charged offense of capital murder because there was no kidnapping and mandates a finding that Applicant is not guilty of capital murder. ...................................................................... 23

Claim For Relief Number Four: ................................................................... 24

Ms. Coleman's conviction for the offense of the injury to a child would have become final prior to her conviction for capital murder if her conviction for the Injury to a Child offense had not been appealed to the Second Court of Appeals in Fort Worth and allowed to become final.  In such event, Applicant's capital murder conviction would have been barred by the application of the prohibition against double jeopardy.  The failure to allow her conviction for injury to a child to become final prior to her capital murder conviction resulted in a violation of Applicant's Sixth Amendment Rights to effective assistance of counsel and mandates a finding that Applicant is not guilty of capital murder. ............................................................................................. 24

Claim For Relief Number Five: ................................................................... 24

The evidence relied on to support the jury's finding of future dangerousness consisted of the facts of the indicted crime and the facts of the extraneous offense.  Admittedly, the circumstances of the underlying offense alone may be sufficient to support a jury's affirmative answer to the issue on future dangerousness.  However, when all of the evidence is considered, no rational juror would find a probability that Applicant will commit future crimes of violence so as to be a continuing threat to society.  Consequently, this Court should hold that the evidence is insufficient to support the jury's finding on Special Issue Number One, vacate Applicant's death sentence, and reform the judgment to reflect a sentence of life in prison. ........................................... 24

Claim For Relief Number Six: ..........................................................................24

Under the present Texas statute applied to Applicant, the jury has again been given unfettered discretion that both invites and permits arbitrary application of the ultimate penalty. This violates Ms. Coleman's Eighth Amendment right to be free from the arbitrary and capricious infliction of the death penalty. ...............................................24

Claim For Relief Number Seven: ....................................................................24

Ms. Coleman's Fourteenth Amendment right to due process and Eighth Amendment rights as interpreted in *Penry v. Johnson* were violated because the mitigation special issue set forth in the Texas death penalty statute sends mixed signals to the jury thereby rendering any verdict reached in response to that special issue intolerably unreliable. 24

VII. FACTS OF THE CASE ...........................................................................25

VIII. AFFIDAVITS AND ATTACHMENTS.....................................................41

IX. ARGUMENT AND AUTHORITIES .........................................................42

CLAIM FOR RELIEF NUMBER ONE – RESTATED: .............................................42

APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF HER LEGAL TEAM'S FAILURE TO ADEQUATELY INVESTIGATE THE FACTS OF THIS CASE AS REQUIRED BY *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984) AND AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION. .........................42

CLAIM FOR RELIEF NUMBER TWO – RESTATED: ............................................55

APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF HER LEGAL TEAM'S FAILURE TO ADEQUATELY INVESTIGATE AND PRESENT MITIGATION EVIDENCE AS REQUIRED BY *WIGGINS V. SMITH*, (123 S.CT. 2527 (2003) AND *LEWIS V. DRETKE*, 355 F.3D 364 (5TH CIR. 2003) AND AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION.....................................................55

CLAIM FOR RELIEF NUMBER THREE – RESTATED:..........................................61

APPLICANT HAS BEEN DENIED HER RIGHT TO DUE PROCESS UNDER THE
FIFTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION AS
SHE IS INCARCERATED AND FACES EXECUTION FOR AN OFFENSE FOR
WHICH SHE IS ACTUALLY INNOCENT...............................................................61

CLAIM FOR RELIEF NUMBER FOUR – RESTATED:...........................................66

APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL AS REQUIRED BY
THE   SIXTH   AND   FOURTEENTH   AMENDMENTS   TO   THE   U.   S.
CONSTITUTION WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE
ASSISTANCE OF COUNSEL AS A RESULT OF APPELLATE COUNSEL'S
FAILURE TO  ALLOW HER CONVICTION FOR INJURY TO A CHILD TO
BECOME FINAL PRIOR TO HER CONVICTION FOR CAPITAL MURDER
BECOMING FINAL...............................................................................................66

CLAIM FOR RELIEF NUMBER FIVE – RESTATED: ...........................................77

APPLICANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHT  TO BE
FREE FROM A WHOLLY ARBITRARY DEPRIVATION OF LIBERTY AND
EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE ARBITRARY AND
CAPRICIOUS INFLICTION OF THE DEATH PENALTY WERE VIOLATED
BECAUSE   THE   EVIDENCE   ADDUCED   AT   TRIAL   WAS   LEGALLY
INSUFFICIENT TO SUPPORT THE JURY'S ANSWER TO THE FUTURE
DANGEROUSNESS SPECIAL ISSUE.......................................................................77

CLAIM FOR RELIEF NUMBER SIX – RESTATED:...............................................80

APPLICANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND
EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE ARBITRARY AND
CAPRICIOUS INFLICTION OF THE DEATH PENALTY WERE VIOLATED
BECAUSE THE STATUTE UNDER WHICH APPLICANT WAS SENTENCED TO
DEATH  ALLOWS THE JURY TOO MUCH DISCRETION TO DETERMINE WHO
SHOULD LIVE AND WHO SHOULD DIE AND BECAUSE IT LACKS THE
MINIMAL STANDARDS AND GUIDANCE NECESSARY FOR THE JURY TO
AVOID THE ARBITRARY AND CAPRICIOUS IMPOSITION OF THE DEATH
PENALTY. ............................................................................................................80

CLAIM FOR RELIEF NUMBER SEVEN - RESTATED: .......................................... 83

APPLICANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND EIGHTH AMENDMENT RIGHTS AS INTERPRETED IN *PENRY V. JOHNSON* WERE VIOLATED BECAUSE THE MITIGATION SPECIAL ISSUE SET FORTH IN THE TEXAS DEATH PENALTY STATUTE SENDS MIXED SIGNALS TO THE JURY THEREBY RENDERING ANY VERDICT REACHED IN RESPONSE TO THAT SPECIAL ISSUE INTOLERABLY UNRELIABLE. ....................................... 83

VII. CONCLUSION ........................................................................................ 86

CERTIFICATE OF SERVICE .......................................................................... 88

## TABLE OF AUTHORITIES

**Cases**

*Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).............................20

*Bell v. U.S.,* 439 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) ............................................73

*Benton v. Maryland,* 395 U.S. 784,  89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).................73

*Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932)........................73

*Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) .......................70, 73

*Buckley v. Valeo,* 424 U.S. 1 (1976)...................................................................................6

*Callins v. Collins,* 114 S. Ct. 1127 (1994)..........................................................................81

*Coleman  v. State,* No. 75,478 (Tex. Crim. App. - 2009)............................................13, 14

*Ex parte Nielsen,* 131 U.S. 176, 9 S.Ct. 672, U.S. (1889)..................................................69

*Felker v. Turpin,* 518 U.S. 651 (1996) ................................................................................6

*Flores v. Johnson,* 210 F.3d 456 (5th Cir. 2000).................................................................77

*Green v. U.S.,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).....................................69

*Gregg v. Georgia,* 428 U.S. 153 (1976) ......................................................................80, 82

*Gutierrez de Martinez v. Lamagno,* 515 U.S. 417 (1995) ...................................................8

*Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977). ........70

*Harrison v. Quarterman,*  496 F.3d 419 (5th Cir.2007)......................................................20

*Herrera v. Collins,* 506 U.S. 390, 113  S.Ct. 853, 122 L.Ed.2d 203 (1993). ....................61

*Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980)...........................73

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). ..............62, 77

*Kirkpatrick v. Whitley*, 992 F.2d 491 (5th Cir. 1993)...............................43, 56

*Lewis v. Dretke*, 355 F.3d 364 (5th Cir. 2003). .......................................55, 56

*Lewis v. Jeffers*, 497 U.S. 764 (1990)...........................................................77

*Lindh v. Murphy*, 521 U.S. 320 (1997)........................................................10

*Lockyer v. Andrade*, 538 U.S. 63 (2003). ....................................................11

*Marbury v. Madison*, 5 U.S. 137 (1803). ......................................................7

*Martinez v. Johnson*, 255 F.3d 229 (5th Cir. 2001)....................................77

*Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975)........................68

*Middleton v. McNeil*, 541 U.S. 433 (2004) ..................................................10

*Miller-El v. Dretke*, 545 U.S. 231 (2005).......................................................5

*Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). ......................73

*Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002).........................................42, 56

*North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)..........73

*Penry v. Johnson*, 121 S. Ct. 1910 (2001). ......................................83, 84, 85, 86

*Penry v. Lynaugh*, 492 U.S. 302 (1989). ...............................................81, 83

*Perez v. Cain*, 529 F.3d 588 (5th Cir.2008). ..............................................20

*Perillo v. Johnson*, 205 F.3d 775 (5th Cir. 2000). .................................43, 56

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995). .................................6

x

*Richards v. Quarterman*, 578 F. Supp. 2d 849 (N. D. Tex. 2008) .......................................... 20

*Robinson v. California*, 370 U.S. 660 (1962). ..................................................................... 80

*Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 2466 (2005) ......................................... 58

*Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)................. 71

*Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). ........................... 61

*Strickland v. Washington*, 466 U.S. 668 (1984). ........................................................passim

*Tennard v. Dretke*, 542 U.S. 274 (2004) ............................................................................. 5

*Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). .....................passim

*United States v. Klein*, 80 U.S.  128 (1872).......................................................................... 7

*United States v. Padelford*, 76 U.S.  531 (1870). ................................................................. 7

*Whalen v. U.S.*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)............................ 75

*Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ...............passim

*Williams v. Taylor*, 529 U.S. 362 (2000). ............................................................... 8, 10, 11

*Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); .................................................. 10

*Woodson v. North Carolina*, 428 U.S. 280, (1976). .......................................................... 80

*Yakus v. United States*, 321 U.S. 414 (1944) (Rutledge, J., dissenting)................................ 8

**Statutes**

28 U.S.C. 2254 (d)(1)(1996)...................................................................................................15

28 U.S.C. 2254 (d)(2)(1996)...................................................................................................15

28 U.S.C. 2254(1996) ............................................................................................................15

28 U.S.C. 2254(a)(1996). ........................................................................................................1

28 U.S.C. 2254(d)(1)(1996)...................................................................................................20

28 U.S.C. 2254(d)(1996). .........................................................................................................5

28 U.S.C. 2254(d)(2)(1996)...................................................................................................20

Tex. Code Crim. Proc. Art. 11.071 § 11(2007 .....................................................................16

Tex. Code Crim. Proc. Art. 11.071 § 9(2007). .....................................................................16

Tex. Code Crim. Proc. Art. 11.071 §4(a)(2007)...................................................................15

Tex. Code Crim. Proc. art. 35.22 (1989) ...............................................................................85

Tex. Code Crim. Proc. art. 37.071 § 2(e)(1) (2002). ............................................................81

Tex. Code Crim. Proc. art. 37.071, § 2(b)(1) (2002)............................................................78

Tex. Penal Code §20.01(1)(B)(i)(2003). ..........................................................................63, 64

Tex. Penal Code §20.01(2)(A)(2003). ....................................................................................63

Tex. Penal Code. §9.01(3)(1997). ..........................................................................................63

**Other Authorities**

ABA Guidelines 10.7 – Investigations. ...................................................................................59

**Treatises**

Christopher Eisgruber & Lawrence Sager, <u>Why the Religious Freedom Restoration Act is Unconstitutional</u>, 69 N.Y.U. L. Rev. 437 (1994) ............................................................8

Henry M. Hart, Jr., <u>The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic</u>, 66 Harvard L.Rev. 1362 (1953) ...........................................8

James Kimberly et al., <u>More Racial Testimony Found in Capital Cases</u>, Hous. Chron., June 9, 2000, at A1 ....................................................................................................81

James S. Liebman & William F. Ryan, <u>Some Effectual Power": The Quantity and Quality of Decisionmaking Required of Article III Courts</u>, 98 Columbia L. Rev. 696 (1998). ..8

**Constitutional Provisions**

U. S. Const. Amend. VI...................................................................................passim

U. S. Const. Amend. VIII. ..................................................................................80

U.S. Const. Amend. XIV ....................................................................................80

# I. JURISDICTION

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.[1]

Petitioner Lisa Ann Coleman is confined on death row in the Mountain View Unit of the Texas Department of Corrections in Gatesville, Texas. She is in the custody of the Respondent Rick Thaler, Director of the Institutional Division of the Texas Department of Criminal Justice, pursuant to the judgment and sentence from the 297th District Court of Tarrant County, Texas. This confinement is in substantial violation of the Constitution and laws of the United States. Ms. Coleman files this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.

---

[1] 28 U.S.C. 2254(a)(1996).

1

## II.  CLAIMS PRESENTED

**CLAIM FOR RELIEF NUMBER ONE:**

APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF HER LEGAL TEAM'S FAILURE TO  ADEQUATELY INVESTIGATE THE FACTS OF THIS CASE AS REQUIRED BY *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984) AND AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION.

**CLAIM FOR RELIEF NUMBER TWO:**

APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF HER LEGAL TEAM'S FAILURE TO  ADEQUATELY INVESTIGATE AND PRESENT MITIGATION EVIDENCE AS REQUIRED BY *WIGGINS V. SMITH*, (123 S.CT. 2527 (2003) AND *LEWIS V. DRETKE*, 355 F.3D  364 (5TH CIR. 2003) AND AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION.

**CLAIM FOR RELIEF NUMBER THREE:**

APPLICANT HAS BEEN DENIED HER RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION AS SHE IS INCARCERATED AND FACES EXECUTION FOR AN OFFENSE FOR WHICH SHE IS ACTUALLY INNOCENT.

**CLAIM FOR RELIEF NUMBER FOUR:**

APPLICANT'S SIXTH AMENDMENT RIGHT TO COUNSEL AS REQUIRED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U. S. CONSTITUTION WAS VIOLATED WHEN SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF APPELLATE COUNSEL'S FAILURE TO ALLOW HER CONVICTION FOR INJURY TO A CHILD TO BECOME FINAL PRIOR TO HER CONVICTION FOR CAPITAL MURDER BECOMING FINAL.

**CLAIM FOR RELIEF NUMBER FIVE:**

APPLICANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO BE FREE FROM A WHOLLY ARBITRARY DEPRIVATION OF LIBERTY AND EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE ARBITRARY AND CAPRICIOUS INFLICTION OF THE DEATH PENALTY WERE VIOLATED BECAUSE THE EVIDENCE ADDUCED AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S ANSWER TO THE FUTURE DANGEROUSNESS SPECIAL ISSUE.

**CLAIM FOR RELIEF NUMBER SIX:**

APPLICANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE ARBITRARY AND CAPRICIOUS INFLICTION OF THE DEATH PENALTY WERE VIOLATED BECAUSE THE STATUTE UNDER WHICH APPLICANT WAS SENTENCED TO DEATH ALLOWS THE JURY TOO MUCH DISCRETION TO DETERMINE WHO SHOULD LIVE AND WHO SHOULD DIE AND BECAUSE IT LACKS THE MINIMAL STANDARDS AND GUIDANCE NECESSARY FOR THE JURY TO AVOID THE ARBITRARY AND CAPRICIOUS IMPOSITION OF THE DEATH PENALTY.

3

**CLAIM FOR RELIEF NUMBER SEVEN:**

      APPLICANT'S FOURTEENTH AMENDMENT RIGHT TO DUE
PROCESS AND EIGHTH AMENDMENT RIGHTS AS
INTERPRETED IN *PENRY V. JOHNSON* WERE VIOLATED
BECAUSE THE MITIGATION SPECIAL ISSUE SET FORTH IN
THE TEXAS DEATH PENALTY STATUTE SENDS MIXED
SIGNALS TO THE JURY THEREBY RENDERING ANY
VERDICT REACHED IN RESPONSE TO THAT SPECIAL ISSUE
INTOLERABLY UNRELIABLE.

# III. STANDARD OF REVIEW

## A. 28 U.S.C. §2254(d).

In 1996 Congress passed the Anti-terrorism and Effective Death Penalty Act (AEDPA), applicable to all habeas corpus proceedings, which substantially revised 28 U.S.C. §2254(d). Revised Section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[2]

Section 2254(d) applies only to claims that the state courts have adjudicated on the merits. It prohibits granting habeas relief unless the state court adjudication suffers from one of the flaws identified in subsections (1) and (2) of 28 U.S.C.§1154(d). In general §2254(d) establishes conditions which must be met – beyond proof that the petitioner is in state custody in violation of his constitutional rights, before habeas relief can be granted.[3] Simple constitutional error is insufficient to warrant habeas relief.

---

2 28 U.S.C. 2254(d)(1996).

3 *Miller-El v. Dretke*, 545 U.S. 231, 266 (2005) (holding that the petitioner was entitled to relief because the state court's decision was "unreasonable as well as erroneous."); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) ("Relief may not be granted unless the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United

## B. 28 U.S.C. §2254(D) VIOLATES THE SEPARATION OF POWERS AND THIS COURT SHOULD INSTEAD REVIEW THE DECISION OF STATE COURT FOR CONSTITUTIONAL ERROR.

### 1. DOCTRINE OF SEPARATION OF POWERS

"The doctrine of separation of powers is at the heart of our Constitution."[4] To maintain the "vital check against tyranny," the power of the government is divided into three branches.[5] Congress makes the law, the Executive enforces the law, and the federal court says what the law is. The Framers were particularly concerned with the legislative branch encroaching on the territory of the judiciary. "This sense of a sharp necessity to separate the legislative from the judicial power, prompted by the crescendo of legislative interference with private judgments of the courts, triumphed among the Framers of the new Federal Constitution."[6] Therefore, it was necessary for the judiciary, through the Supreme Court, to establish its own footing as a co-equal department of the government. In the key case determining the scope of judicial review, the Supreme Court explained, "[i]t is emphatically the province and duty of the judicial department to say

---

States"); *Felker v. Turpin*, 518 U.S. 651, 662 (1996) ("Our authority to grant habeas relief to state prisoners is limited by 2254, which specifies the conditions under which relief may be granted....").
4 *Buckley v. Valeo*, 424 U.S. 1, 119 (1976).
5 *Id.* at 121.
6 *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 221 (1995).

6

what the law is."[7] More importantly, the federal courts act as the protector of the Constitution and may not give effect to a law conflicting with the Constitution.[8]

Congress may not interfere with a court's duty to interpret the law. In *United States v. Klein*,[9] the Court addressed a dispute arising from the aftermath of the Civil War. During the war, Congress had authorized the government to seize and hold, in trust, abandoned property found in the Confederate states. After the war, individuals were allowed to reclaim their property on proof in the newly established Article III Court of Claims that they owned the property and had not aided the rebellion. In interpreting this law, the Court held that owners of abandoned properties, who had aided the rebellion but who later were pardoned by the President after signing oaths of allegiance, could also recover their property.[10]

Subsequently, Congress passed the Act of 1870, designed to reverse *Padelford*. The Court refused to enforce this Act because "its great and controlling purpose is to deny the pardons granted by the President the effect which this court [in *Padleford*] had adjudged them to have . . . as equivalent to proof of loyalty."[11] The Court further held, "[W]e must think that Congress has inadvertently passed the limit which separates the legislative from the judicial power.... It is of vital importance that these powers be kept

---

7 *Marbury v. Madison*, 5 U.S. 137, 177 (1803).
8 *Id.* at 177.
9 *United States v. Klein*, 80 U.S. 128 (1872).
10 *United States v. Padelford*, 76 U.S. 531 (1870).
11 *United States v. Klein*, 80 U.S. at 145.

7

distinct."[12]   Thus, like *Marbury*, *Klein* forbade Congress to authorize the Court's jurisdiction only to then limit the    manner in which the Court may exercise its jurisdiction.[13]

## 2. 28 U.S.C. §2254(D) VIOLATES SEPARATION OF POWERS

Section 2254(d) violates the doctrine of separation of powers in two regards. First, contrary to the holdings in *Marbury* and *Klein*, Congress afforded the federal courts habeas jurisdiction, but limited the courts' manner of review by suspending *stare decisis*. Second, §2254(d) prohibits the federal courts from saying what the law is. Instead, §2254(d) requires the federal courts to defer to and uphold state court decisions erroneously interpreting federal constitutional law.

The Supreme Court has never directly determined the constitutionality of 2254(d). In *Williams v. Taylor*,[14] the Supreme Court denied certiorari on that very question. However, Justice Stevens, joined by Justices Souter, Ginsberg and Breyer, advocated for an interpretation of  §2254(d) in which the "mood" made "clear that Congress intended

---

12 *U.S. v. Klein*, 80 U.S. at 147;  Henry M. Hart, Jr., <u>The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic</u>, 66 Harvard L.Rev. 1362, 1373 (1953) [If Congress directs an Article III court to decide a case, I can easily read into Article III a limitation on the power of Congress to tell the court how to decide it. . . [a point made] clear long ago in *United States v. Klein*."]; Christopher Eisgruber & Lawrence Sager, <u>Why the Religious Freedom Restoration Act is Unconstitutional</u>, 69 N.Y.U. L. Rev. 437, 471 (1994) "Klein prohibits . . . the conscription of the Court to play a role in a charade . . . in which the Court is obliged to act as though its own judgment in a matter of consequence is different than it actually is."].
13 *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 430 (1995); *Yakus v. United States*, 321 U.S. 414, 468 (1944) (Rutledge, J., dissenting); James S. Liebman & William F. Ryan, <u>Some Effectual Power": The Quantity and Quality of Decisionmaking Required of Article III Courts</u>, 98 Columbia L. Rev. 696 (1998).
14 *Williams v. Taylor*, 529 U.S. 362 (2000).

8

federal judges to attend with the utmost care to state-court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ."[15] Despite the mood of utmost care, the four-justice plurality maintained it was the federal courts duty to say what the law is.

## C.   18 U.S.C. §2254(d) VIOLATES SEPARATION OF POWERS BECAUSE CONGRESS ORDERED THE SUSPENSION OF THE JUDICIAL TOOL OF *STARE DECISIS*

As explained in *Marbury* and *Klein*, once Congress grants jurisdiction to the federal courts to resolve matters, it may not dictate the how the federal courts must adjudicate those matters.  However, this is precisely what §2254(d) does.  Pursuant to §2254, a petition for writ of habeas corpus may only be granted if the state court decision was objectively unreasonable in light of clearly established federal law, as determined by the Supreme Court.  Thus, an objectively unreasonable decision in light of clearly established federal law as determined by the circuit courts is not enough to warrant granting relief.  Therefore, when determining the merits of a habeas claim, the federal courts are deprived of an essential tool, *stare decisis*.  Whereas in all cases but those governed by §2254(d), the law of the land in that circuit would control.  Along those same lines, the law, as interpreted in other circuits, would also be instructive.  However,

---

15 *Id.* at 386 (Stevens, J., concurring).

9

in the habeas context as prescribed by §2254(d), federal courts are required to suspend the judicial tool of *stare decisis* and instead defer to the state court finding.

## D. 28 U.S.C. §2254(d) VIOLATES SEPARATION OF POWERS BECAUSE CONGRESS REQUIRES FEDERAL HABEAS COURTS TO DEFER TO AND UPHOLD STATE COURT DECISIONS ERRONEOUSLY INTERPRETING FEDERAL CONSTITUTIONAL LAW.

The limitations imposed by §2254(d) have been interpreted and applied to require federal habeas courts to defer to state court constitutional decisions.[16]  The Supreme Court explained this "highly deferential standard for evaluating state court rulings" was formulated to effectuate Congress' 1996 redesign of the habeas corpus regime to vest in the state courts "primary responsibility" for enforcing federal constitutional standards in state criminal proceedings.[17] This standard "demands that state court decisions be given the benefit of the doubt" in their interpretations of federal constitutional law.[18]

A state court decision involves an unreasonable application of "clearly established Federal law," "if the state court identifies the correct governing legal principle from our decisions but unreasonably applies that principle to the facts of the petitioner's case."[19] For the state court's application to qualify as "unreasonable," it must involve an "increment of incorrectness beyond error" which is "great enough to make the decision

---

16 *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997) ("2254(d)'s new, highly deferential standard for evaluating state court rulings"); *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam) (grant of habeas relief reversed because the lower court's ruling "failed to give appropriate deference to the state court's decision.").
17 *Woodford v. Visciotti*, 537 U.S. 19, 24, 27 (2002) (per curiam); *Middleton v. McNeil*, 541 U.S. 437; *Lindh v. Murphy*, 521 U.S. 333 at n. 7.
18 *Woodford v. Visciotti*, 537 U.S. at 24.
19 *Williams v. Taylor*, 529 U.S at 413.

unreasonable in the independent objective judgment of the federal court." Objectively

unreasonable means more than erroneous, and more than "clear error."[20]

> "Thus under §2254(d)(1), a state court's application of established Supreme Court precedent controls the outcome in a habeas proceeding if it was merely erroneous. Even if, in the federal habeas court's view, the state court actually "failed to apply" clearly established Supreme Court precedent, [*Early v. Packer*, 537 U.S. 3, 10-11 (2002) (per curiam)], or committed "clear error," and the Article III court is of the "firm conviction" that the state court's ruling was constitutionally erroneous, the state court's decision controls and habeas relief must be denied.[21]

In addition to deferring to state court interpretation of federal constitutional law,

§2254(d) requires the federal courts to uphold erroneous state court decisions. The result

leads to absolute absurdity. Based on the "objectively unreasonable" standard of

§2254(d), a federal court must give effect to a state court decision and deny the state

inmate's habeas claim even if that decision was wrong and the inmate's incarceration is

unconstitutional.

The Supreme Court's prescribed mode of §2254(d) analysis confirms that this

statute clips the habeas court's Article III wings. In both *Williams v. Taylor* and *Wiggins

v. Smith*,[22] the Court applied §2254(d) by first determining whether the federal

constitutional claim (ineffective assistance of counsel in each case) had merit; and then

evaluated the state court decision, observing the constraints of §2254(d)(1). That is, after

---

20 *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).
21 *Id.* at 75-76.
22 *Williams v. Taylor*, 529 U.S. at 362; and *Wiggins v. Smith*, 539 U.S. 510 (2003).

11

the Article III Court has concluded that the petitioner is in custody in violation of the Federal Constitution, it must further determine that the standards of §2254(d)(1) have been met before it can remedy that violation. In a close case, the impact of §2254(d)(1) may lead to a denial of habeas relief that would have been granted on *de novo* review. Thus, the statute creates a class of cases in which a state court's decision is found to be in violation of the supreme law of the land, as determined by the Supreme Court, but is given controlling effect over the judgment of any Article III Court. In these cases, the Article III Court is commanded to evaluate the petitioner's constitutional claims but is prohibited from remedying any violation.

## E. CONCLUSION

Ms. Coleman requests this Court to hold §2254(d) unconstitutional and instead review the decision of the state court for constitutional error rather than "an unreasonable application" of constitutional law. Alternatively, Ms. Coleman requests this Court find that the State Court decision was an unreasonable determination of federal law and/or was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, reverse her conviction, and remand this case to state court for a new trial.

## IV.  STATEMENT OF THE CASE

### A. CONFINEMENT AND RESTRAINT

Applicant is currently being held in confinement by the Director of the Texas Department of Criminal Justice, Institutional Division, at the Mountain View Unit, in Gatesville, Texas.  Applicant is confined pursuant to a conviction of capital murder, in cause number 1016470R, from the Criminal the 297th District Court of Tarrant County, Texas, the Honorable Phillip Vick (jury *voir dire*) and Honorable Everett Young (pre-trial and trial) judges presiding.  The sentence of death was delivered by the court in response to the jury's answers to the special issues, such answers being incorporated in the judgment of the court signed June 21, 2006.

### B. PROCEDURAL HISTORY

Applicant's conviction and death sentence were affirmed on direct appeal by the Texas Court of Criminal appeals on December 9, 2009.[23]  A petition for a *writ of certiorari* was filed with the United States Supreme Court on April 6, 2010, and denied on October 4, 2010.  Applicant filed a Petition for Writ of Habeas Corpus and a Motion for Evidentiary Hearing in the 297th District Court of Tarrant County, Texas, on May 5, 2008.  The Texas Court of Criminal Appeals denied relief on her Application for Post-Conviction Writ of Habeas Corpus on August 25, 2010.

---

23 *Coleman  v. State*, No. 75,478 (Tex. Crim. App. - 2009).

13

## C. STATUS OF DIRECT APPEAL

Applicant appealed her death sentence to the Texas Court of Criminal Appeals, cause number AP-75,478.  The Texas Court of Criminal Appeals issued its opinion on December 9, 2009.[24]  A petition for a *writ of certiorari* was filed with the United States Supreme Court on April 6, 2010, and denied on October 4, 2010.

## D. STATUS OF STATE WRIT OF HABEAS CORPUS

Applicant filed a Petition for Writ of Habeas Corpus and a Motion for Evidentiary Hearing in the 297th District Court of Tarrant County, Texas, on May 5, 2008.  The Texas Court of Criminal Appeals denied relief on her Application for Post-Conviction Writ of Habeas Corpus on August 25, 2010.

## E. STATEMENT CONCERNING SUCCESSIVE WRIT PROVISION

This is Applicant's first application for a writ of habeas corpus in federal court following the exhaustion of her state remedies.

## F. STATEMENT CONCERNING FILING DATE.

The United States Supreme Court denied Applicant's Petition for writ of certiorari on October 4, 2010.  Thus, this Application is timely if filed on or before October 3, 2011.

---

24 *Coleman  v. State*, No. 75,478 (Tex. Crim. App.).

## V. NEED FOR EVIDENTIARY HEARING.

### A. REQUEST FOR EVIDENTIARY HEARING

Applicant is entitled to an evidentiary hearing on the merits of the claims in her federal writ of habeas corpus because she meets the requirements for a hearing under 28 U.S.C §2254(d). First, the state court decision in this case was contrary to and or involved an unreasonable application of federal law.[25] In addition, the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[26] In sum, the state court trier of fact failed to reliably find the relevant facts after a full hearing as required by 28 U.S.C 2254. Thus, Applicant is entitled to a full hearing in this Court.[27]

Texas law contemplates that an application for writ of habeas corpus by which the applicant seeks relief from a felony judgment imposing the death penalty is directed to the Court of Criminal Appeals of Texas.[28] The processing of the application is handled by the trial court in which the conviction occurred (state trial court).[29] After the state trial court has held a hearing and has made findings of fact pertinent to the grounds of the application, the clerk of that court transmits to the Court of Criminal Appeals the application, other documents filed in the proceeding, transcripts of all hearings, any

---

25 28 U.S.C. 2254 (d)(1)(1996).
26 28 U.S.C. 2254 (d)(2)(1996).
27 28 U.S.C. 2254(1996); *Townsend v. Sain*, 372 U.S. 293, 312-13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).
28 Tex. Code Crim. Proc. Art. 11.071 § 4(a)(2007).
29 *Id.*

affidavits, and any other matters used by the state trial court in resolving issues of fact.[30]
Upon reviewing the record, the Court of Criminal Appeals enters its judgment remanding
the Applicant to custody or ordering his release, as the law or facts may justify.[31]

As described in the quoted statute, the procedure prescribed by Texas law seems
reasonable.  However, its application to Coleman's state habeas application was not.  The
state trial court purported to have a hearing on her state habeas application and made
findings of fact after the purported hearing.  However, as shown herein, the state trial
court did neither in a meaningful way and Applicant was denied her right to participate in
the purported hearing.  Basically, her state court hearing was a sham.

## B. FACTS SHOWING NEED FOR EVIDENTIARY HEARING

Applicant filed her Application for Writ of Habeas Corpus on May 5, 2008. [32]  On
September 2, 2008, the State of Texas (State), through the office of the Tarrant County
Criminal District Attorney (Prosecutor), filed a State's Requests for Affidavits requesting
the trial court to order Applicant's trial attorneys to file affidavits addressing Applicant's
ineffective assistance of counsel claims.[33]  On September 17, 2008, the Trial Court
denied Applicant's Motion for an Evidentiary Hearing by finding there was no need for a
live evidentiary hearing and ordered Applicant's trial counsel to file affidavits describing

---

30 Tex. Code Crim. Proc. Art. 11.071 § 9(2007).
31 Tex. Code Crim. Proc. Art. 11.071 § 11(2007).
32 CR 2
33 CR 195

16

the entire scope of their efforts in Applicant's representation in both the guilt/innocence and punishment stages of Applicant's trial.  The Trial Court also ordered Applicant's appellate counsel to file an affidavit describing his reasons for proceeding as he did in Applicant's appeal.[34]

Applicant's appellate attorney filed his affidavit on December 22, 2008.[35] Applicant's trial attorney Michael P. Heiskell filed his affidavit on February 23, 2009. [36] Applicant's trial attorney Fred Cummings filed his affidavit on March 4, 2009.[37]  The State filed Requested Findings of Fact and Conclusions of Law on March 31, 2009,[38] and Applicant filed her Requested Findings of Fact and Conclusions of Law on April 23, 2009.[39]

By Order dated May 19, 2009, (a mere 49 days after the State filed Requested Findings of Fact and Conclusions of Law) the Trial Court adopted the State's proposed memorandum, findings of fact, and conclusions of law with the following Order:

> "Having carefully reviewed the State's proposed memorandum, findings of fact and conclusions of law, the Court hereby orders, adjudges and decrees that they be adopted as its own...."[40]

---

34 CR 222
35 CR 225
36 CR 227
37 CR 230
38 CR 258
39 CR 275
40 CR 283

17

Applicant's writ, including the Trial Court's findings, were forwarded to the Texas Court of Criminal Appeals.

The Texas Court of Criminal Appeals was not satisfied with the State Court proceedings. By Order dated April 5, 2010, the Court of Criminal Appeals remanded Applicant's writ for further fact finding concerning whether Applicant's trial counsel interviewed Marcela Williams (Applicant's Co-defendant), if she was not interviewed then why not, and why she was not called to testify.[41]   On April 12, 2010, Applicant filed a Request for Evidentiary Hearing wherein she requested a live evidentiary hearing to determine the additional facts required by the Texas Court of Criminal Appeals.[42] Thereafter, on April 14, 2010, the State filed a Motion in Opposition to Appellant's Request for a Live Evidentiary Hearing wherein the reasoning given by the State for not holding a hearing was as follows:

> "Any live hearing in the case would unnecessarily delay the progress of the case, as Applicant would have to be "benched back" to attend. In addition, it strains credulity that such a specific request for information cannot be adequately dealt with via brief affidavits from the experienced trial counsel in this case."[43]

---

41 CR – Remand. 2.
42 CR – Remand. 4.
43 CR – Remand. 9.

18

On April 13, 2010,[44] the Trial Court denied Applicant's request for a live evidentiary hearing and ordered Applicant's trial counsel to file affidavits addressing the following issues:

1) Whether counsel interviewed Marcela Williams.
2) If Counsel did not interview Marcela Williams, why did he not interview her?
3) If counsel did interview Marcela Williams, why did he not call her to testify as a witness?

Since there was not a live hearing, Applicant was not brought to Tarrant County from the Mountain View Unit for the hearing.  In addition, Applicant did not have the opportunity to provide any additional facts by way of affidavits, testimony, or any other documents.  Applicant also did not have an opportunity to cross-examine the statements of her attorneys.  Because of these glaring deficiencies, Applicant did not have a real opportunity to participate in either the 'remand hearing' or the 'hearing' on her original writ.  Again, her hearing was a sham.

It strains credulity that a live hearing on either her original writ or the remand hearing would unnecessarily delay the progress of the case as urged by the state.  Due process requires that Applicant be afforded an opportunity to fully participate in the hearing and this right cannot be abrogated by the Prosecution's desire that the proceedings not be "unnecessarily delayed."  Applicant is on trial for her life and deserves the opportunity to develop the facts necessary to support the allegations claimed

---

44 CR – Remand. 7.

19

in both her state writ and the writ filed in this case. The state trial court did not reliably find the relevant facts after a full hearing. Thus, applicant is entitled to a full evidentiary hearing in this court.[45]

The determination of the state court in denying Applicant's claims involve unreasonable applications of clearly established federal law, as determined by the Supreme Court.[46] These state court determinations were also based on an unreasonable determination of the facts in light of the evidence presented at the state hearing.[47] "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case."[48] And, "[t]he focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable ...."[49] While the state court correctly identified principles adopted by the Supreme Court in *Strickland* it unreasonably applied them to the facts of this particular case.[50]

_____

45 *Richards v. Quarterman,* 578 F. Supp. 2d 849, 853-54 (N. D. Tex. 2008); 28 U.S.C. 2254(d)(1)(1996).
46 28 U.S.C. 2254(d)(1)(1996).
47 28 U.S.C. 2254(d)(2)(1996).
48 *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).
49 *Id.*
50 *Perez v. Cain,* 529 F.3d 588, 594 (5th Cir.2008). *See also Harrison v. Quarterman,* 496 F.3d 419, 424 (5th Cir.2007) (stating that "[a] decision constitutes an 'unreasonable application' of clearly established federal law if it is 'objectively unreasonable.' ").

20

Under 28 USC §2254, "[A] federal evidentiary hearing is required unless the state court trier of fact has, after a full hearing reliably found the relevant facts."[51]   In Applicant's case, the state trial court did not reliably find the relevant facts after a full hearing.   Instead, only 49 days after the State filed Requested Findings of Fact and Conclusions of Law, the trial court signed an order stating that the trial court had carefully reviewed the materials and determined that there are no controverted, previously unresolved factual issues material to the legality of Applicant's confinement and death sentence.   It is not reasonable that the trial court trier of fact could have conducted the type of hearing contemplated by 28 USC §2254.

## C. CONCLUSION

The procedures used in determining Applicant's state writ were exactly like those found wanting by this Court in *Richards v. Quarterman*.  The state court proceedings as applied to Applicant are just as improper in her case as they were in Mr. Richard's case. Because of the inadequate procedures used in Applicant's state writ proceedings, she is entitled to an evidentiary hearing on the allegations made in this writ of habeas corpus.

In addition to the inadequacies of Applicant's state court proceedings, the state court's determinations were unreasonable applications of clearly established federal law as determined by the Supreme Court.  The determinations made by the state court on her

---

51 *Townsend v. Sain*, 372 U.S. 293, 312-13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

21

state writ were also objectively unreasonable under the existing state court record. Thus,

Applicant is entitled to a hearing on this writ under the provisions of 28 U.S.C §2254(d).

22

## VI. SUMMARY OF THE ARGUMENT

**Claim For Relief Number One:**

Ms. Coleman's legal team failed to adequately investigate and present guilt/innocence evidence related to the kidnapping allegation contained in the indictment. As a result, Applicant was prevented from presenting a defense to the kidnapping allegation. Specifically, Applicant's legal team failed to interview Tonya Coleman Brown, Sharon Coleman, and Marcella Williams. Because of these failures, Applicant's legal team was not able to present a defense to the 'kidnapping' element of the capital murder charge. These failures resulted in a violation of Applicant's Sixth Amendment Rights to effective assistance of counsel and require that she be given a new trial.

**Claim For Relief Number Two:**

Ms. Coleman's legal team failed to adequately investigate and present mitigation evidence. Specifically, the facts and circumstances surrounding Applicant's trial and the pre-trial investigation show that her legal team failed to thoroughly investigate her mitigation evidence. The mitigation evidence was not effectively presented at trial. These failures resulted in a violation of Applicant's Sixth Amendment Rights to effective assistance of counsel and require that Applicant be given a new punishment trial.

**Claim For Relief Number Three:**

Ms. Coleman is actually innocent of the crime of conviction. She did not commit a kidnapping as required to support a capital murder conviction. Evidence obtained from Brown, Coleman, and Williams clearly shows that Applicant did not commit or attempt to commit a kidnapping. This evidence was not available because Applicant's attorneys failed to adequately investigate the facts of this case and is inexorably intertwined with Applicant's claim of ineffective assistance of trial counsel. The evidence from Brown, Coleman, and Williams establishes by clear and convincing evidence that no reasonable juror could have convicted Applicant of the charged offense of capital murder because there was no kidnapping and mandates a finding that Applicant is not guilty of capital murder.

23

**Claim For Relief Number Four:**

Ms. Coleman's conviction for the offense of the injury to a child would have become final prior to her conviction for capital murder if her conviction for the Injury to a Child offense had not been appealed to the Second Court of Appeals in Fort Worth and allowed to become final.  In such event, Applicant's capital murder conviction would have been barred by the application of the prohibition against double jeopardy.  The failure to allow her conviction for injury to a child to become final prior to her capital murder conviction resulted in a violation of Applicant's Sixth Amendment Rights to effective assistance of counsel and mandates a finding that Applicant is not guilty of capital murder.

**Claim For Relief Number Five:**

The evidence relied on to support the jury's finding of future dangerousness consisted of the facts of the indicted crime and the facts of the extraneous offense.  Admittedly, the circumstances of the underlying offense alone may be sufficient to support a jury's affirmative answer to the issue on future dangerousness.  However, when all of the evidence is considered, no rational juror would find a probability that Applicant will commit future crimes of violence so as to be a continuing threat to society.  Consequently, this Court should hold that the evidence is insufficient to support the jury's finding on Special Issue Number One, vacate Applicant's death sentence, and reform the judgment to reflect a sentence of life in prison.

**Claim For Relief Number Six:**

Under the present Texas statute applied to Applicant, the jury has again been given unfettered discretion that both invites and permits arbitrary application of the ultimate penalty.  This violates Ms. Coleman's Eighth Amendment right to be free from the arbitrary and capricious infliction of the death penalty.

**Claim For Relief Number Seven:**

Ms. Coleman's Fourteenth Amendment right to due process and Eighth Amendment rights as interpreted in *Penry v. Johnson* were violated because the mitigation special issue set forth in the Texas death penalty statute sends mixed signals to the jury thereby rendering any verdict reached in response to that special issue intolerably unreliable.

24

## VII. FACTS OF THE CASE

**A)     Guilt/Innocence Facts**

On July 26, 2004, at 7:54 a.m., Fort Worth emergency services received a 911 call after Marcella Williams ("Williams") discovered her nine-year-old son, Davontae Williams, unconscious.[52]    Marcella administered CPR and Lisa Ann Coleman ("Appellant"), put him into a warm bath in an attempt to revive him. [RR 30 @ 83-84]  In spite of their efforts, paramedics who arrived at the scene later were unable to resuscitate him.[53]

Arlington police officers who arrived on the scene found Davontae lying on the bathroom floor wearing a diaper, with two bandages on his right arm, a bandage around his left arm, and a bandage on his right thigh.[54]    Vomit was in Davontae's mouth and nose, and was visible on his clothing and the sheets in his bedroom.[55]    Davontae had an injury to his lip that did not appear to be healing, a deformity to one of his ears, and multiple scars in various stages of healing.[56]  Although food was present in his vomit, he appeared to be malnourished.  From marks found on his wrist and ankles, it was concluded that he had been tied up for extended periods of time by a cord or similar

---

52 RR 30 @ 82, 113
53 RR 30 @ 83-84
54 RR 30 @ 61
55 RR 30 @ 115
56 RR 30 @ 61

25

object.[57]

During the investigation at the scene, police determined that Appellant, Williams' long-time lover, had spent a great deal of time at the apartment with Williams and her children. Appellant was subsequently arrested and charged with capital murder and injury to a child in connection with Davontae's injuries and death.[58]

The State's theory was that Davontae's death was the result of malnutrition caused by Marcella and Appellant tying him up with an extension cord or other object that prevented him from gaining access to adequate food. The State also argued that Marcella and Appellant had caused his death by whipping him with a belt and striking him with a golf club, and then failing to obtain adequate medical treatment for those injuries.

The capital murder allegations arose from the State's theory that by restraining Davontae in his home, Marcella and Appellant had committed or attempted to commit the offense of kidnapping. Although Appellant was not Davontae's mother or caretaker in any official capacity, the prosecution argued that Appellant had either assumed the duty of caretaker, or had acted as a party to the offense.

Appellant's trial began on June 7, 2006.[59] Arlington Police Officer Jim Ford testified that he was one of the officers called to the scene to investigate Davontae's death. When he arrived at Williams' home, Davontae's body was on the bathroom floor

---

57 RR 30 @ 61
58 RR 30 @ 103-104
59 RR 27 @ 1

26

with several bandages on his arms and legs.[60]   Ford said that Davontae appeared

extremely underweight and malnourished.[61]   Although Williams said that Appellant

visited her apartment often, she was not at Williams' home when Ford arrived.[62]   Ford

located Appellant at a nearby apartment in the same building, where her mother and

Appellant's 12 year-old son, Dontrell Coleman, resided.[63]

Ford testified that Appellant was cooperative and agreed to voluntarily accompany

him to the station for questioning.[64]   According to Ford, Appellant was articulate and

appeared to be lucid.[65]

At the station, Appellant received a *Miranda* warning and then gave the following

written statement:[66]

> "My name is Lisa Ann Coleman and I was born on 10-6-75.  My Social
> Security number is 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.  I quit school in the 11th grade because I got
> pregnant.  I have a son named Dontrell Coleman and he was born on 1-28-92.
> Dontrell lives with my mother Patricia Coleman.  I have known Marcella Williams
> for about 9 years.  We are lovers.  I spend a lot of time at Marcella's apartment at
> 1010 E. Arkansas #26 but I do not live there.  About four or five years ago I was
> accused of abusing one of Marcella's children, Davontae, when he was about 4
> years old, but I wasn't arrested.  I had whipped Davontae with a belt and
> accidentally bruised his leg.  Davontae was a very hyper child.
>
> I stopped whipping Davontae in February or March of 2004.  I noticed that

---

60 RR 30 @ 57, 59-61
61 RR 30 @ 62
62 RR 30 @ 103-04
63 RR 30 @ 64
64 RR 30 @ 62-64
65 RR 30 @ 62-64
66 RR 30 @ 64-66

I was whipping harder that [sic] I should have been and leaving welts. I discussed it with my mother and decided to stop whipping him all together. About a month and a half ago Davontae sneaked downstairs in the middle of the night and stood on a chair and turned on the stove and was going to cook him some eggs. He already had the eggs broken up in a bowl with salt and pepper on them. Marcella and I were afraid that Davontae was going to poisen [sic] himself or set the house on fire in the middle of the night so I tied his arms with a shirt. Marcella and I have tied Davontae up on several occasions. The last time was about three and a half weeks ago when Marcella tied him up with a thing from a coat that you use to tied [sic] the coat together at the waist. She tied his arms together. I am not aware of anyone who has struck Davontae recently and as far as I know he has received no injuries in months.

Last night I came back to Marcella's apartment at about 2:00 a.m. or 3:00 a.m. Marcella and the three kids were all upstairs asleep. Davontae was asleep on a mattress next to Marcella's bed. Marcella's little girls were asleep on a separate mattress. Marcella was asleep on a separate bed by herself. I did not know if Davontae was dead or alive because I didn't check on him. He was lying on his right side. Several hours later Marcella woke me up screaming and hollering. I went into the bathroom Marcella was trying to give Davontae CPR on the floor. I picked him up and put him in the tub with warm water. He was vomiting. Marcella called 911 on her cell phone. I got the phone from Marcella and got instructions from the 911 operator and I gave Davontae CPR until the ambulance got there. Davontae had a cold for the last two or three days. He had been vomiting [sic] and had diarihia [sic] and that is why he had a diaper on him. I don't know for sure how he got the injuries on his arms and legs. It could have been from being tied up."[67]

The cause of Davontae's death was hotly disputed at trial. Dr. Daniel J. Konzelmann was employed as a deputy medical examiner at the Tarrant County Medical Examiner's office at the time of Davontae's death and performed the autopsy in this

_____

[67] ST EXH 5

28

case.[68] In his autopsy report, Konzelmann listed the direct cause of Davontae's death as malnutrition with a minor case of pneumonia, but concluded the death was a homicide.[69] Davontae had wounds to his arms, leg, and lip that were infected and needed medical attention that he had apparently not received.[70] Although his initial impression was that the victim had died of blunt force injuries, his exterior wounds were not the direct cause of his death, and none of his injuries were life-threatening.[71] Konzelmann opined that some of the wounds on Davontae's body appeared infected and thus may have been related to the pneumonia that he had.[72] Konzelmann also speculated that the wounds were evidence that Davontae had recently been bound and unable to get food.[73] The lack of fat cells in the body indicated to Konzelmann that Davontae was significantly malnourished at the time of his death.[74]

Konzelmann admitted that someone had been treating Davontae's wounds with home remedies, but stated that the care was inadequate as a medical treatment.[75] According to Konzelmann, an average person looking at Davontae and the wounds on his body would have known that he required treatment.[76] Davontae's body had numerous

---

68 RR 29 @ 48-49, 55
69 RR 29 @ 59, 119-20, 130
70 RR 29 @ 96
71 RR 29 @ 59, 62, 115, 152, 195
72 RR 29 @ 63
73 RR 29 @ 63-64, 96-97, 100
74 RR 29 @ 109-111
75 RR 29 @ 106
76 RR 29 @ 107, 199

29